IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BAIRD & WARNER RESIDENTIAL SALES, INC., | |
| Plaintiff / Counter-Defendant, | Case No. 23-cv-16113 |
| v. | Judge Mary M. Rowland |
| RXHST NAPERVILLE, LLC f/k/a/ CAHST NAPERVILLE, LLC, | |
| Defendant / Counter-Plaintiff / Cross-Plaintiff. | |
| v. | |
| BAIRD & WARNER REAL ESTATE, INC., | |
| Cross-Defendant | |

### MEMORANDUM OPINION AND ORDER

Plaintiff/Counter-Defendant Baird & Warner Residential Sales, Inc. ("Plaintiff" or "Tenant") instituted this lawsuit against Defendant/Counter-Plaintiff RXHST Naperville, LLC ("Defendant" or "Landlord") seeking a declaratory judgment that Tenant had the right to terminate the parties' lease agreement. Landlord brings counterclaims alleging that Tenant breached or anticipatorily repudiated the lease and seeking damages. Tenant moves for partial summary judgment on Landlord's counterclaims, arguing that Landlord cannot recover any damages as a matter of law.

For the reasons stated below, Tenant's motion for partial summary judgment [36] is denied.

1

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law controls which facts are material. *Id*. After a "properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Id*. at 250 (quoting Fed. R. Civ. P. 56(e)).

The Court "consider[s] all of the evidence in the record in the light most favorable to the non-moving party, and [ ] draw[s] all reasonable inferences from that evidence in favor of the party opposing summary judgment." *Logan v. City of Chicago*, 4 F.4th 529, 536 (7th Cir. 2021) (quotation omitted). The Court "must refrain from making credibility determinations or weighing evidence." *Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 467 (7th Cir. 2020) (citing *Anderson*, 477 U.S. at 255). In ruling on summary judgment, the Court gives the non-moving party "the benefit of reasonable inferences from the evidence, but not speculative inferences in [its] favor." *White v. City of Chicago*, 829 F.3d 837, 841 (7th Cir. 2016) (internal citations omitted). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment." *Id.*

## BACKGROUND[1]

Tenant is a real estate brokerage company. [38] at ¶ 5. Landlord is a real estate investment trust that owns, operates, manages, and develops commercial real estate. [44] at ¶ 1. Landlord owned the property located at 1528 Aurora Avenue in Naperville Illinois (the "Premises"). *Id.* at ¶ 2. Prior to 2022, the Premises was undeveloped. *Id.* at ¶ 3.

In June 2022, Tenant and Landlord entered into a 12-year Lease Agreement (the "Lease") for the Premises. [38] at ¶ 5; [44] at ¶ 8. Both Landlord and Tenant were represented by counsel during the negotiations for the Lease. [44] at ¶ 5. The Lease required Landlord to construct the shell of the building on the Premises at Landlord's own expense. [44] at ¶¶ 6, 10. The Lease provided that the Lease Commencement Date would be reached upon substantial completion of the Landlord's work constructing the shell of the building and delivery of the Premises to Tenant. [38] at ¶ 6; [44] at ¶ 11. The Lease defined substantial completion as when Landlord's architect or contractor determined that Landlord's work was complete in accordance with the terms set forth in the Lease, and Tenant would be able to commence construction on the interior of the building. [38] at ¶ 9. After the Lease Commencement Date, the Lease provides for a 180-day Deferred Rent Period. [38] at ¶ 8; [44] at ¶ 13. The Rent Commencement Date would be the first day after the Deferred Rent Period ends. [38] at ¶ 7; [44] at ¶ 15.

---

[1] These facts are taken from Plaintiff's statement of facts [38] and Defendant's statement of additional facts [44] and are undisputed unless otherwise noted.

The Lease provides for an option for Tenant to terminate the Lease under certain circumstances:

> Subject to extension for Unforeseen Causes, in the event the Lease Commencement Date has not occurred by July 1, 2023, Tenant shall have the option to terminate this Lease by providing Landlord with written notice, whereupon this Lease shall terminate and neither party shall have any further obligations with respect to the Lease.

[38] at ¶ 10; [44] at ¶ 16; [44-1], Ex. 3 at ¶ 4. The Lease defines "Unforeseen Causes" as causes or events beyond the reasonable control of Landlord, including delays caused by supply chain issues. [38] at ¶ 11; [44] at ¶ 19.

The Lease also provides Landlord with remedies in the event of Tenant's default. [38] at ¶ 24. The Lease provides that upon Tenant's default, Landlord may: in addition to all other rights and remedies at law or in equity:

> Terminate this Lease and Tenant's right of possession of the Premises, and recover all damages to which Landlord is entitled herein, at law and in equity, specifically including, without limitation, all Landlord's expenses of reletting (including repairs, legal fees and brokerage commissions), plus Rent accelerated to the end of the Term as liquidated damages;

[38] at ¶¶ 24-25; [44-1], Ex. 3 at ¶ 23(a) (the "Accelerated Rent Clause"). Alternatively, the Lease provides that Landlord may "[t]erminate Tenant's right of possession of the Premises without terminating this Lease," in which case Landlord would be permitted, but not obligated, to re-let the Premises. [38] at ¶ 26; [44-1], Ex. 3 at ¶ 23(b) (the "Termination of Possession Clause").

During Landlord's work to construct the building, delivery of an electrical panel was severely delayed due to global supply chain issues. [44] at ¶¶ 23-24. Landlord therefore did not substantially complete its work and the Lease

4

Commencement Date did not occur by July 1, 2023. [38] at ¶¶ 12-13; [44] at ¶¶ 21-24. Landlord ultimately incurred over $5 million in costs to construct the building on the Premises pursuant to the Lease. [44] at ¶ 20.

On September 4, 2023, Tenant provided written notice that it terminated the Lease. [38] at ¶ 18. Landlord disputed that Tenant had the right to terminate the Lease. *Id.* Tenant initiated this lawsuit on September 20, 2023, seeking a declaration that Tenant had the right to terminate the Lease. *Id.* at ¶ 19. Landlord filed counterclaims on November 20, 2023, alleging that Tenant breached the lease or, in the alternative, that Tenant anticipatorily repudiated the lease. *Id.* at ¶ 21; [30] at ¶¶ 73-84. Landlord seeks accelerated rent as liquidated damages. [38] at ¶ 23. Landlord substantially completed work on the building on December 15, 2023, after which Landlord took steps to re-let the Premises. [38] at ¶ 30; [44] at ¶¶ 30-31.

## ANALYSIS

Tenant moves for partial summary judgment on Landlord's counterclaims arguing that the Accelerated Rent Clause is an unenforceable penalty. [37] at 9.

### I. The Accelerated Rent Clause is an Unenforceable Penalty

A liquidated damages clause provides a predetermined remedy in the event a party breaches a contract, but an unreasonably large, liquidated damages clause is unenforceable under Illinois law on public policy grounds. *Smart Oil, LLC v. DW Mazel, LLC*, 970 F.3d 856, 863 (7th Cir. 2020) (citing *McNamara v. O'Donnell Haddad LLC*, 2016 IL App (2d) 150519-U). "Whether a liquidated damages clause in

5

a contract is a penalty or a valid provision is a question of law." *Id.* (citing *Grossinger MotorCorp., Inc. v. Am. Nat'l Bank & Trust Co.*, 607 N.E.2d 1337, 1345 (1992)).

"The purpose of a liquidated damages provision is to provide parties with a reasonable predetermined damages amount where actual damages may be difficult to ascertain." *Karimi v. 401 N. Wabash Venture, LLC*, 952 N.E.2d 1278, 1290 (Ill. App. 1st Dist. 2011). "Courts generally give effect to such provisions 'if the parties have expressed their agreement in clear and explicit terms and there is no evidence of fraud or unconscionable oppression.'" *Id.* (quoting *Hartford Fire Insurance Co. v. Architectural Management, Inc.*, 550 N.E.2d 1110 (1990)). Parties agreeing to a liquidated damages provision accept the inherent risk that liquidated damages may exceed actual damages in some cases or that actual damages may be greater in other cases. *Id.*

"[T]here is no fixed rule applicable to all liquidated damages provisions, and each provision must be evaluated and decided on its own facts and circumstances." *Bear Valley Partners v. McDonald's Corp.*, 2024 IL App (2d) 230245-U, ¶ 44, *appeal denied*, 244 N.E.3d 237 (Ill. 2024). Illinois courts will generally find that a liquidated damages provision is enforceable where "(1) the parties intended to agree in advance to the settlement of damages that might arise from the breach, (2) the amount of liquidated damages was reasonable at the time of contracting, bearing some relation to the damages which might be sustained, and (3) actual damages would be uncertain in amount and difficult to prove." *Id.* (citing *Grossinger*, 607 N.E.2d at 1345–46. As the party resisting enforcement of the liquidated damages provision, Tenant bears

6

the burden of proving that the provision operates as a penalty and is unenforceable. *Id.* (citing *Pav-Saver Corp. v. Vasso Corp.*, 493 N.E.2d 423, 427 (Ill. App. 3d Dist. 1986)).

As the Seventh Circuit has observed, "Illinois's requirement that liquidated damages be reasonable has been characterized as 'mysterious,' especially in cases involving sophisticated parties." *Id.* (citing *XCO Intern. Inc. v. P. Sci. Co.*, 369 F.3d 998, 1001 (7th Cir. 2004)). "Yet the rule against contractual penalties hangs on, but is chastened by an emerging presumption against interpreting liquidated damages clauses as penalty clauses." *Id.* (internal quotations omitted).

### A. Intent to Agree & Uncertainty of Actual Damages

Tenant argues that the Accelerated Rent Clause is unenforceable because it allows Landlord the option to choose between recovering actual damages or liquidated damages. [37] at 11. Tenant argues that when there are multiple options for recovery, the parties have not agreed in advance to the settlement of damages arising from a breach of the contract. *Id.*

The Accelerated Rent Clause provides that Landlord may:

> Terminate this Lease and Tenant's right of possession of the Premises, and recover all damages to which Landlord is entitled herein, at law and in equity, specifically including, without limitation, all Landlord's expenses of reletting (including repairs, legal fees and brokerage commissions), ***plus*** Rent accelerated to the end of the Term as liquidated damages;

[44-1], Ex. 3 at ¶ 23(a) (emphasis added). According to Tenant, the word "plus" means that Landlord is entitled to both actual damages *and* liquidated damages. [37] at 11. The Court disagrees with Tenant's interpretation of the Accelerated Rent Clause. The

7

provision allows the Landlord to "recover all damages" at law and in equity including "expenses of reletting … plus Rent accelerated to the end of the term as liquidated damages." [44-1], Ex. 3 at ¶ 23(a). The phrasing allows recovery of both expenses plus accelerated rent, not a choice between actual and liquidated damages. The parties reached an agreement.

The cases Tenant relies on include contractual language that expressly provided a party with an option to choose between actual or liquidated damages.[2] [37] at 11. Here, the Accelerated Rent Clause does not provide Landlord with such an option to choose between liquidated damages or actual damages. Based on the plain language of the provision, the Accelerated Rent Clause makes clear that liquidated damages are included within the damages to which Landlord is entitled.

The Court also finds that actual damages were uncertain at the time of contracting. Tenant makes no argument that actual damages could have been calculated with certainty at the time of contracting. *See e.g.*, [37]. Tenant has therefore waived any argument as to this factor. *See Rankins v. Sys. Sols. of Kentucky*, No. 19-CV-3775, 2021 WL 4963552, at *2 (N.D. Ill. Oct. 26, 2021) ("Since plaintiff has failed to address the second element, he has waived any position on it.").

### B. Reasonable Amount of Liquidated Damages

---

[2] *See Grossinger*, 607 N.E.2d at 1339 ("the earnest money shall be forfeited to the [defendant] to be retained by the [defendant] as liquidated damages, or at [defendant]'s option, [defendant] may exercise any other remedy available at law") (alterations in original); *Catholic Charities of Archdiocese of Chicago v. Thorpe*, 741 N.E.2d 651, 656 (Ill. App. 1st Dist. 2000) ("if the termination is caused by the Purchaser's fault, then *at the option of the Seller* and upon notice to the Purchaser, *the earnest money shall be forfeited to the Seller …* to be retained by the Seller as liquidated damages.") (emphasis in original).

8

Tenant next argues that the Accelerated Rent Clause is unenforceable because the amount of liquidated damages is unreasonable. Whether the amount of liquidated damages is reasonable depends on whether the amount "reasonably forecasts and bears some relation to the parties' potential loss as determined at the time of contracting." *Smart Oil*, 970 F.3d at 863 (quoting *Karimi*, 952 N.E.2d at 1288). "[A]n award of liquidated damages is improper where it would confer a windfall upon the non-breaching party." *Bear Valley Partners*, 2024 IL App (2d) 230245-U, ¶ 43 (citing *GK Dev., Inc. v. Iowa Malls Financing Corp.*, 3 N.E.3d 804, 816 (Ill. App. 1st Dist. 2013)).

The Court finds that the Accelerated Rent Clause is not reasonable and would confer a windfall on Landlord. The liquidated damages provision is unreasonable because it fails to offset the fair market rental value of the property and because it fails to discount future rent to present value. The Accelerated Rent Clause allows Landlord to recover "Rent accelerated to the end of the Term as liquidated damages." [44-1], Ex. 3 at ¶ 23(a). The provision provides no qualifiers or offsets to account for the potential rental income Landlord could gain by re-letting the property to a new tenant or for the difference in worth between future and present rent. Landlord would therefore be entitled to recover future rent for the full 12-year term of the Lease.

### i. Reasonable Rental Value

Courts have found liquidated damages clauses to be enforceable where the calculation of damages offsets the reasonable rental value of the property. In *Slyce Coal Fired Pizza Co. v. Metro. Square Plaza, LLC*, the court found that a liquidated

damages provision was enforceable where the lease provided a formula for calculating damages which "contemplate[d] an award of the remaining rent under the lease term, 'discounted at the rate of four percent' to present worth, 'minus the fair and reasonable rental value of the Premises for such period,' also discounted to present value." 258 N.E.3d 199, 230 (Ill. App. 1st Dist. 2025), *reh'g denied* (Apr. 25, 2025). The court emphasized that the "the fair rental value of the premises is subtracted from the damage calculation," noting that a liquidated damages provision which "demands payment of *all* remaining rent for the remainder of the lease term, without accounting for the landlord's ability to relet the premises … is a penalty." *Id.* (citing *2336 N. Clark, LLC v. Hair Fairies, Inc.*, 2022 IL App (1st) 211597-U, ¶ 31).

Courts applying Illinois law have consistently found that a liquidated damages clause must account for the value returned to a lessor by repossessing property from a lessee. S*ee BA Jacobs Flight Services, LLC v. Rutair Ltd.*, No. 12 C 2625, 2015 WL 8328631, at *3 (N.D. Ill. Dec. 8, 2015) ("[T]he Court finds that the acceleration clause in the Lease Agreement is an unenforceable penalty because the Lease Agreement does not take into account the effect of the early recapture of the leased Aircraft"); *AAR Intern., Inc. v. Vacances Heliades S.A.*, 349 F. Supp. 2d 1114, 1117 (N.D. Ill. 2004) ("AAR's liquidated damage provision does not credit the defendants with the difference between the estimated residual value at the end of the lease term and the obviously greater value of the aircraft when it was repossessed."); *Penske Truck Leasing Co., L.P. v. Chemetco, Inc.*, 725 N.E.2d 13, 19 (Ill. App. 5th Dist. 2000) ("The lease provides for a formula, as opposed to a specific amount, which begins with an

agreed-upon original amount and takes into consideration the amount of depreciation of the trucks before they are returned and the used truck market at the time of the breach.").

The Accelerated Rent Clause fails to account for the fair market rental value of the Premises and is therefore analogous to the liquidated damages provision found to be unenforceable in *Hair Fairies*. There, the court held that a liquidated damages clause was unenforceable because it would allow the landlord to collect five years' worth of accelerated rent without any offset for the rental value of the property. *Hair Fairies*, 2022 IL App (1st) 211597-U, ¶ 31. The court noted that the liquidated damages provision "could result in a sizable windfall to plaintiff if it relets the property before the end of the lease term and collects double rent from defendants and its new tenant." *Id*. The liquidated damages provision therefore "functions as a penalty for nonperformance, rather than the parties' attempt to estimate the damages resulting from defendants' breach." *Id*.

The Accelerated Rent Clause contains no formula for calculating damages that would allow an offset for the rental value of the property. Like the accelerated rent clause in *Hair Fairies*, Landlord could collect 12 years' worth of rent from Tenant and then also collect double rent from a new tenant after reletting the property. The Accelerated Rent Clause therefore functions as a penalty for nonperformance and is unenforceable. *See Hair Fairies*, 2022 IL App (1st) 211597-U, ¶ 31; *Jameson Realty Group v. Kostiner*, 813 N.E.2d 1124, 1130 (Ill. App. 1st Dist. 2004) ("It is a general rule of contract law that, for reasons of public policy, a liquidated damages clause

11

which operates as a penalty for nonperformance or as a threat to secure performance will not be enforced."); *GK Dev., Inc. v. Iowa Malls Financing Corp.*, 3 N.E.3d 804, 818 (Ill. App. 1st Dist. 2013) ("Our courts have also invalidated liquidated damages clauses based on public policy concerns where the purpose of the clause is to punish nonperformance rather than estimate damages.").

Landlord argues that mitigation efforts are irrelevant to the issue of liquidated damages and that Landlord had no duty to mitigate because the parties expressly agreed to waive Landlord's obligation to relet the property. [50] at 16-17. "It is the general rule that, in the case of an *enforceable* liquidated damages provision, mitigation is irrelevant and should not be considered in assessing damages." *2460-68 Clark, LLC v. Chopo Chicken, LLC*, 198 N.E.3d 655, 664 (Ill. App. 1st Dist. 2022) (emphasis added). But the Court is not inquiring into Landlord's mitigation efforts to assess damages under an *enforceable* liquidated damages provision. Rather, the Court has found that the liquidated damages provision is *unenforceable* because it functions as a penalty for nonperformance. The fact that the parties have contractually waived Landlord's duty to mitigate is similarly irrelevant to the Court's determination that the liquidated damages provision is unenforceable. *See* [50] at 17.

### ii. Discount to Present Value

The Accelerated Rent Clause is also unenforceable because it fails to discount to present value the rent that Landlord would have received in the future. Courts have found that Accelerated Rent Clauses must discount the value of future rent to present day worth. *See Natl. City Healthcare Fin. v. Refine 360, LLC*, 607 F. Supp. 2d

12

881, 883 (N.D. Ill. 2009) ("That formulation, which calls for a current cash payment that simply *aggregates* items … rather than properly discounting them to present value, is a prototypical penalty provision of the type that to this Court's knowledge no court will enforce."); *Gen. Elec. Capital Corp. v. Laser Hair Removal, Inc.*, 97 F. Supp. 2d 1210, 1210 (N.D. Ill. 2000) ("Because that provision does not take into account the need (1) to reduce the accelerated future rental payments to present value … the Lease provisions implicate an unenforceable penalty"); *MAC Funding Corp. v. O.B. Moplastic Intern., Inc.*, No. 97 C 333, 1997 WL 28307, at *1 (N.D. Ill. Jan. 21, 1997) ("But to the extent that provision calls for an undiminished full acceleration of the future rents under any Lease, it amounts to an unenforceable penalty."); *see also Slyce Coal Fired Pizza*, 258 N.E.3d at 230 (finding liquidated damages enforceable where damages award was discounted to present worth).

Landlord argues that if the Court finds that the accelerated rent must be discounted to present value, the Court should not invalidate the liquidated damages clause entirely and simply reform the clause to include a discount to present value. [50] at 15-16. Landlord relies on *XCO Intern.*, where the Seventh Circuit noted in dicta that even if a liquidated damages clause unreasonably applied to minor breaches, "the proper judicial remedy would be to reform the clause to limit it to those [major] breaches, such as the one that occurred in this case, for which it constituted a reasonable specification of damages." 369 F.3d at 1005. The Accelerated Rent Clause does not unreasonably apply to a minor breach when it should only apply to a major breach. It fails to account for offsets that would provide for a reasonable

13

amount of damages. The Court cannot simply limit the application of the Accelerated Rent Clause and would instead have to insert new language into the provision, which the Court cannot do. *See PNC Equip. Fin., LLC v. Flash Limousine, Inc.*, No. 20 C 6773, 2021 WL 3142124, at *2 (N.D. Ill. July 25, 2021) ("a court cannot rewrite a contract to suit one of the parties").

The Court therefore finds that the liquidated damages provision of the Accelerated Rent Clause is an unenforceable penalty.

## II. Actual Damages Available to Landlord

Tenant argues that Landlord is left with no remedy if the Accelerated Rent Clause is unenforceable because the Lease has no enforceable survival clause. [37] at 8. Landlord agues that it may recover actual damages if the Accelerated Rent Clause is unenforceable.

As discussed above, the Accelerated Rent Clause provides that Landlord may recover "all damages to which Landlord is entitled herein, at law and in equity." [44-1], Ex. 3 at ¶ 23(a). Specifically included within the damages Landlord is entitled to are liquidated damages in the form of accelerated rent. *Id.* The Lease also provides that if any provision of the lease is invalid, it shall not affect the validity or enforceability of any other provision. *Id.* at ¶ 52. Although the liquidated damages provision of the Accelerated Rent Clause is unenforceable, Landlord may still recover other damages it is entitled to at law and in equity.

"The fact that the damage formula is invalid does not deprive [Landlord] of a remedy." *Lake River Corp. v. Carborundum Co.*, 769 F.2d 1284, 1292 (7th Cir. 1985).

14

Landlord may still be entitled to recover actual damages in the event the trier of fact determines that Tenant breached the Lease. *See Checkers Eight Ltd. Partn. v. Hawkins*, 241 F.3d 558, 563 (7th Cir. 2001) ("Because the damages clause is an unenforceable penalty under Illinois law, the plaintiffs are entitled only to the actual damages caused by the defendants' late payments."). Because Landlord still has a remedy and may recover actual damages, Tenant's motion for summary judgment on Landlord's counterclaims is denied.

## CONCLUSION

For the stated reasons, Plaintiff's motion for summary judgment [36] is denied. The liquidated damages provision of the Lease is unenforceable, but Landlord's counterclaims survives because Landlord is entitled to seek other damages available under law, equity, and the terms of the Lease, including actual damages.

E N T E R:

Dated: July 21, 2025

MARY M. ROWLAND
United States District Judge