**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| BAIRD & WARNER RESIDENTIAL SALES, INC., | |
| Plaintiff / Counter-Defendant, | Case No. 23-cv-16113 |
| v. | Judge Mary M. Rowland |
| RXHST NAPERVILLE, LLC f/k/a/ CAHST NAPERVILLE, LLC, | |
| Defendant / Counter-Plaintiff / Cross-Plaintiff. | |
| v. | |
| BAIRD & WARNER REAL ESTATE, INC., | |
| Cross-Defendant | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff/Counter-Defendant Baird & Warner Residential Sales, Inc. ("Plaintiff" or "Tenant") instituted this lawsuit against Defendant/Counter-Plaintiff RXHST Naperville, LLC ("Defendant" or "Landlord") seeking a declaratory judgment that Tenant had the right to terminate the parties' lease agreement. Landlord brings counterclaims alleging that Tenant breached or anticipatorily repudiated the lease and seeking damages.

Tenant now moves to bar a damages theory proffered by Landlord based on the purported loss of future rent. [97]. For the reasons stated below, Tenant's motion [97] is granted.

1

## I.  Background

### A.  Factual Background

The Court previously detailed the factual background of the parties' dispute in ruling on Tenant's motion for partial summary judgment. [68]. For the sake of brevity, the Court repeats herein only the high-level details.

In June 2022, Tenant and Landlord entered into a Lease Agreement (the "Lease") for a property located in Naperville, Illinois (the "Premises"). *Id.* at 3. The Lease provided that a "Lease Commencement Date" would be reached upon substantial completion of the Landlord's work in constructing a shell of a building on the Premises and delivery of the Premises to Tenant. *Id.* Subject to extensions for "Unforeseen Causes," the Lease provides the Tenant an option to terminate the Lease in the event the Lease Commencement Date had not occurred by July 1, 2023. *Id.* at 4.

Due to supply chain issues, Landlord did not substantially complete its work, and the Lease Commencement Date did not occur by July 1, 2023. *Id.* at 4–5. As such, on September 4, 2023, Tenant provided written notice to Landlord that it terminated the Lease. *Id.* at 5. Landlord disputes that Tenant had the right to terminate the Lease. *Id.*

### B.  Subsequent Factual Events

As a result of Tenant not taking occupancy of the Premises, Landlord marketed the Premises to mitigate its losses. [97-1] at 5. On March 24, 2025, Landlord signed a lease with Brightmont, Inc. ("Brightmont") commencing on November 1, 2025 for

5,104 square feet of the Premises. *Id*. at 5, Ex. 3. In December 2025, Landlord signed a second lease with Brightmont for an additional 5,400 square feet of the Premises. *Id*. at 5, Ex. 4. Finally, on February 27, 2026, Landlord signed a third lease with Onto Health ("Onto") for the remaining square footage of the Premises. [101-1] at 1, 3 (the three leases together, the "Mitigating Leases.").

### C. Procedural Background

Tenant initiated this lawsuit on September 20, 2023, seeking a declaration that Tenant had the right to terminate the Lease. [1] at 9. Landlord filed counterclaims on November 20, 2023, alleging that Tenant breached the Lease or, in the alternative, that Tenant anticipatorily repudiated the Lease. [4] at 11–31.

On September 27, 2024, Tenant filed a motion for partial summary judgment [36] [37] arguing that (1) the liquidated damages provision in Section 23(a) of the Lease (the "Accelerated Rent Clause") is unenforceable, and (2) as a result, even if Tenant breached the Lease, Landlord is not entitled to recover any damages. [37] at 9.

On July 21, 2025, this Court denied Tenant's motion for partial summary judgment. [68]. In so ruling, the Court agreed with Tenant that the Accelerated Rent Clause is an unenforceable penalty under Illinois law. *Id*. at 5–14. The Court, however, explained that Landlord is still entitled to recover "other damages available under law, equity, and the terms of the Lease, including actual damages." *Id*. at 15. The Court left unresolved what the "other damages available" to Landlord might encompass.

3

After the Court's summary judgment ruling, discovery continued. [75] [77] [96]. At some point, Landlord retained the services of Brian Gaspardo in support of its theory of damages. Mr. Gaspardo eventually submitted an initial expert report ([97-1]) and supplemental expert report ([101-1]) regarding the economic damages suffered by Landlord due to Tenant's purported breach (together, the "Gaspardo Reports"). As an element of the damages suffered, the Gaspardo Reports calculate a differential between the rent that would have been due under the Lease had it not been terminated ([97-1] at Ex. 2) and the rent that Brightmont and Onto are obligated to pay under the Mitigating Leases ([97-1] at Exs. 3, 4; [101-1] at Ex. 2), which was then discounted to present value ([97-1] at Ex. 6; [101-1] at 5).

On February 13, 2026, Tenant filed the instant motion. [97]. The crux of Tenant's argument is that the rent differentials in the Gaspardo Reports are an improper measurement of damages because unpaid future rent after the termination of the Lease cannot be recovered as a matter of Illinois law. As such, Tenant seeks an order barring Landlord's future rent damages claim as well as Mr. Gaspardo from testifying in support thereof.

## II. Legal Standard

Tenant brings the instant motion pursuant to Rule 16(c). [97]. Rule 16(c) allows a court to "consider and take appropriate action … [in regards to] formulating and simplifying the issues, and eliminating frivolous claims or defenses." Fed.R.Civ.P. 16(c)(2). The Advisory Committee Notes regarding subsection (c) clarify that "formulation" of issues "is intended to clarify and confirm the court's power to identify

4

the litigable issues ... in the hope of promoting efficiency and conserving judicial resources by identifying the real issues prior to trial, thereby saving time and expense for everyone." Comments to Rule 16(c).

Whether Rule 16(c) can be used to bar an opposing party's theory of damages is unclear based on the text of the rule. Tenant cites three cases from this district where courts have purportedly utilized Rule 16(c) to do so. [97] at n.1 (citing *Willmott v. Fed. St. Advisors, Inc.*, No. 05 C 1124, 2006 WL 3743716 (N.D. Ill. Dec. 19, 2006), *Zenith Elecs. Corp. v. WH-TV Broad. Corp.*, No. 01 C 4366, 2003 WL 22284326 (N.D. Ill. Oct. 2, 2003), and *Premier Transport, Ltd. v. Nextel Commc'ns, Inc.*, No. 02 C 4536, 2003 WL 21267096 (N.D. Ill. June 2, 2003)). The Court has reviewed those cases. Though all three cases involved Rule 16(c) in some respect, two of the cases—*Premier Transport* and *Willmott*—ultimately converted the Rule 16(c) motions seeking to bar the opposing party's theory of damages into motions for partial summary judgment. *Premier Transport,* 2003 WL 21267096, at *2; *Willmott*, 2006 WL 3743716, at *3. The Court finds that such an approach is appropriate here. The instant motion is akin to a motion for partial summary judgment as it seeks a determination, as a matter of law, that Landlord may not pursue a certain theory of damages. Accordingly, the Court will treat the instant motion as a successive[1] motion for partial summary

---

[1]It is within this Court's discretion to allow a party file a successive motion for summary judgment. *Whitford v. Boglino*, 63 F.3d 527, 530 (7th Cir.1995). As the Court's previous ruling [68] offered no guidance on the permissible scope the "other damages available" to Landlord, good reason exists for a second motion for partial summary judgment directed to this issue.

judgment and will apply the legal standards it outlined when ruling on Tenant's previous motion for partial summary judgment, [68] at 2, in its analysis.

### III.   Analysis

"Illinois does not recognize a common-law right to future rent in the event of a breach, unless the parties have agreed as much through a rent-acceleration clause." *CCP Golden/ 7470 LLC v. Breslin*, 161 F.4th 461, 472 (7th Cir. 2025) (citing *Union Tank Car Co. v. NuDevco Partners Holdings, LLC*, 2019 IL App (1st) 172858, 123 N.E.3d 1177, 1188); *see also Miner v. Fashion Enters., Inc.*, 342 Ill. App. 3d 405, 794 N.E.2d 902, 913 (2003). The reason for this rule is that "unaccrued rent is not a present obligation payable in the future … but is a contingent claim, which may or may not become an enforceable obligation, depending upon many circumstances with reference to the relation of landlord and tenant." *People ex rel. Nelson v. W. Town State Bank*, 373 Ill. 106, 25 N.E.2d 509, 512 (1940). As a result, "claims for damages on account of rent accruing after disaffirmance of the lease" are not cognizable absent a valid rent acceleration clause. *Id. See also Grommes v. St. Paul Tr. Co.*, 147 Ill. 634, 35 N.E. 820, 822 (1893) ("Where the landlord elects to [terminate a lease], he cannot have a recovery for subsequent rent.").

Here, it is undisputed that the Lease was terminated. [43] ¶ 27. Furthermore, this Court previously determined that the Accelerated Rent Clause in the Lease is unenforceable under Illinois law. [68] at 5–14. Putting these concepts together, as the Lease does not have an enforceable rent acceleration clause, Landlord is not entitled

6

under Illinois law to recover future rent accruing after the termination of the Lease. *Nelson*, 25 N.E.2d at 512.

Resisting this conclusion, Landlord asserts[2] the situation here is different because the Lease is a non-executory, build-to-suit lease whereas *Nelson* and its progeny[3] involved "executory" leases. [100] at 7. The Court questions whether a real-property lease can ever be considered non-executory. After all, a lessor retains an obligation to provide possession and quiet enjoyment to its lessee over the entirety of a lease's term. But even accepting Landlord's characterization as true, the Court agrees with Tenant that *Nelson* still applies. Nothing in *Nelson* limits its application to "executory" leases. In fact, the only mention of an executory/non-executory distinction is in the *Nelson* appellate court's decision. *People ex rel. Nelson v. W. Town State Bank*, 299 Ill. App. 242, 20 N.E.2d 156, 160 (1939), rev'd, 373 Ill. 106, 25 N.E.2d 509 (1940) (explaining that "[i]n the instant case the evidence shows the lease is a contract partly executed and partly executory."). But the *Nelson* appellate court invoked that language only to distinguish the periods before and after trial. According to the *Nelson* appellate court, lost rent "sustained up to the time of [trial] can be proven with certainty," and was therefore allowable, whereas post-trial rent "is very

---

[2]On top of attacking the merits, Landlord requests that the Court strike the instant motion on the basis that this Court only granted leave for Tenant to file a "motion to clarify." [100] at 2 (citing [94]). The Court has reviewed the transcript from the January 21, 2026 hearing where leave was granted. [108]. Tenant unequivocally asked permission from this Court to file a Rule 16 motion. The Court therefore declines to strike Tenant's motion on this basis.

[3]Landlord points out that *CCP Golden*, *Union Tank Car*, and *Miner* all trace back to *Nelson*.

7

speculative" and thus not allowed. *Id.* The *Nelson* Supreme Court ultimately rejected the distinction, holding that all rent after lease termination was not allowable, whether for the period before trial or after. *Nelson*, 25 N.E.2d at 512. For these reasons, the Court finds that the *Nelson* appellate court's reference to "partly executed" and "partly executory" places imposed no "executory" lease limitations on the *Nelson* Supreme Court's rule.

Landlord nevertheless argues that it is entitled to future rent under the logic of *Citadel Group Ltd. v. Washington Reg'l Med. Ctr.*, Case No. 07-CV-1394 (N.D. Ill. 2007) (the "Citadel Litigation"). [100] at 7. Though the Citadel Litigation involved a build-to-lease arrangement, nothing in the Citadel Litigation touched on the specific question of whether Citadel's damages for breach of a lease could properly include future rent accruing after the termination of the lease. The Court, therefore, finds *Citadel* inapplicable.

While the Court understands Landlord's frustration in not being able include future rent differentials as part of its actual damages analysis, the situation Landlord now finds itself in is of Landlord's own making. Assuming that Tenant was indeed in default, the Lease provided Landlord the option to (1) "[t]erminate th[e] Lease and Tenant's right of possession of the Premise" or (2) "[t]erminate Tenant's right of possession of the Premises ***without*** terminating th[e] Lease." [100-1] at 14 (emphasis added). Landlord decided to treat the Lease as terminated. [43] ¶ 27. If Landlord had only terminated Tenant's right of possession, an option to collect from Tenant any

8

rent deficiencies as they became due was available. [100-1] at 14. But Landlord did not pursue that option.

## IV. Conclusion

For the stated reasons, Tenant's motion [97] is granted. Landlord may not recover from Tenant any damages based on the future rent after the termination of the Lease. This includes post-termination future rent differentials outlined in the Gaspardo Reports. Trial dates [106] remain set.

Additionally, as the depositions of Jose Marrero and the designee of ECL Consultants have been taken [106], the Court denies Tenant's motions to show cause [84] [86] as moot.

E N T E R:

Dated: April 6, 2026

_Mary M Rowland_

MARY M. ROWLAND
United States District Judge

9