**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| BAIRD & WARNER RESIDENTIAL SALES, INC., | |
| Plaintiff / Counter-Defendant, | Case No. 23-cv-16113 |
| v. | Judge Mary M. Rowland |
| RXHST NAPERVILLE, LLC f/k/a/ CAHST NAPERVILLE, LLC, | |
| Defendant / Counter-Plaintiff / Cross-Plaintiff. | |
| v. | |
| BAIRD & WARNER REAL ESTATE, INC., | |
| Cross-Defendant | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff/Counter-Defendant Baird & Warner Residential Sales, Inc. ("Plaintiff" or "Tenant") instituted this lawsuit against Defendant/Counter-Plaintiff RXHST Naperville, LLC ("Defendant" or "Landlord") seeking a declaratory judgment that Tenant had the right to terminate the parties' lease agreement (the "Lease") for a property located in Naperville, Illinois (the "Premises"). Landlord brings counterclaims alleging that Tenant breached or anticipatorily repudiated the Lease. Landlord also brings a crossclaim against Baird & Warner Real Estate, Inc. ("Guarantor") (together with Tenant, "Baird & Warner") alleging that Guarantor is

1

liable under its guaranty agreement with Landlord (the "Guaranty") for breach of the Guaranty.

Landlord has now moved for clarification and/or reconsideration of this Court's April 6, 2026 Order (the "April 6 Order"). [118]. For the reasons explained below, Landlord's motion [118] is granted in part.

## I. Background

The factual background of this case is described in detail in the April 6 Order [110]. The Court assumes familiarity with those facts.

On April 20, 2026, Landlord moved for clarification and/or reconsideration of the April 6 Order [118], which granted—largely in view of the Illinois Supreme Court's decision in *People ex rel. Nelson v. W. Town State Bank*, 373 Ill. 106, 25 N.E.2d 509 (1940)—Baird & Warner's Rule 16 Motion. [97]. Specifically, Landlord seeks clarification as to the April 6 Order's effect on (1) the measure of damages for its breach of guaranty claim, (2) the measure of damages under its anticipatory repudiation theory; and (3) triple net expenses. [118] at 3. It also seeks reconsideration of the April 6 Order to the extent it bars recovery of lost rent between termination of the Lease and trial. *Id*. at 11.

## II. Analysis

### A. Effect on the Breach of Guaranty Claim

The April 6 Order held that "Landlord may not recover *from Tenant* any damages based on the future rent after the termination of the Lease." [110] at 9 (emphasis added). Landlord requests clarification as to whether the April 6 Order also precludes

2

it from recovering lost rent for the period between termination of the Lease and trial as actual damages for its separate claim against the Guarantor. [118] at 3–8.

The obligations of the Guarantor under the Guaranty were not addressed in the April 6 Order. Rather, the focus of the April 6 Order was on the Lease itself and Tenant's liability for future rent after Landlord decided to treat the Lease as terminated. *See* [110] at 8. Baird & Warner did not move to bar Landlord from claiming future rent as actual damages under the Guaranty in its Rule 16 Motion, and the Court did not rule on that matter. Nothing in Baird & Warner's Rule 16 Motion mentioned the Guaranty. Landlord, in fact, pointed out this omission in its response brief. [100] at 4. The Court, believing that the Rule 16 Motion concerned Tenant's liability for future rent under the Lease, limited its ruling to that question and neglected to address Landlord's point when ruling on the Rule 16 Motion.

The parties now present a host of arguments as to Guarantor's liability under the Guaranty and whether it is co-extensive with, or different than, Tenant's liability under the Lease. [118] at 3–8; [123] at 1–3. The Court will not address these arguments at this time. The motion before the Court is one for clarification and/or reconsideration. [118]. It would be improper for the Court to adjudicate such a critical issue in this procedural posture, especially where the Court has already limited the scope of the parties' briefing. [119]. The Court, therefore, will confine itself to clarifying that the April 6 Order was silent as to Guarantor's liability for lost rent between termination of the Lease and trial. Accordingly, Landlord remains free to pursue that lost rent as actual damages at trial. This does not mean, however, that

3

this theory of damages will ultimately be cognizable. The parties will have the opportunity to reassert their positions as to Guarantor's liability under the Guaranty in post-trial briefing. The Court will not hear another motion on this issue before trial.

## B. Effect on Landlord's Anticipatory Repudiation Claim

Landlord requests clarification as to whether the April 6 Order precludes it from seeking lost rent for the period between termination of the Lease and trial as actual damages under its anticipatory repudiation theory (Count II). [118] at 8–9. In support, Landlord proffers a new interpretation of *Nelson*. Specifically, it maintains that *Nelson* permits anticipatory repudiation claims seeking unpaid future rent so long as the at-issue lease contains "a provision for damages in case of a breach of [the] covenant to pay rent." [126] at 6 (citing *Nelson*, 373 Ill. at 108–109). Landlord claims that the language in Section 23(a) of the Lease allowing it to "recover all damages which Landlord is entitled herein, at law and in equity" amounts to such a provision. *Id.* (citing [1] at 28–29). So therefore, even under *Nelson*, Landlord argues[1] it can recover lost rent after the termination of the Lease via its anticipatory repudiation theory. *Id.*

---

[1]Landlord also cites three cases—*Mazurkiewicz v. Platinum Grp. Props., LLC*, 2016 IL App (4th) 150258-U, *PF Evergreen Park, LLC v. CFLS Evergreen, LLC*, 2022 IL App (1st) 200938-U, and *Glen Hollow P'ship v. Wal-Mart Stores, Inc.*, 139 F.3d 901 (7th Cir. 1998)—for its proposition that anticipatory repudiation applies to Illinois leases. [118] at 10. None of those cases, however, come from the Illinois Supreme Court. Nor do they address *Nelson*.

As a preliminary matter, the Court does not view this request as one for "clarification" but instead one for reconsideration of this Court's finding that, under *Nelson*, "claims for damages on account of rent accruing after disaffirmance of the lease" are not cognizable absent a valid rent acceleration clause. [110] at 6. As Landlord's new interpretation of *Nelson* was not presented in response to Baird & Warner's Rule 16 Motion, [100], it is waived. *Baker v. Lindgren*, 856 F.3d 498, 503 (7th Cir. 2017).

But even on the merits, the Court disagrees with Landlord's reading of *Nelson*. While the language in *Nelson* could have been clearer, the Court reads *Nelson*'s reference to "a provision for damages in case of a breach of [the] covenant to pay rent" not as referring to a separate category of lease provisions in which the language in Section 23(a) falls into, but as referring to a provision that "fix[es] the amount of the rent as the amount of damages to be paid by the tenant in case of a breach of the covenant to pay" *Nelson*, 373 Ill. at 108–10. The authorities *Nelson* relies upon confirm as much, as each includes an explicit provision fixing unpaid future rent. *See Grommes v. St. Paul Tr. Co.*, 147 Ill. 634, 642, 35 N.E. 820, 820 (1893) (containing an express provision that tenant would be liable for the rents accruing up to the end of the term in the event of reentry); *Smith v. Goodman*, 149 Ill. 75, 85, 36 N.E. 621, 624 (1893) (containing an express provision that if the lessee abandoned or vacated the premises, the lessee would pay deficiency payments); *Gardiner v. William S. Butler & Co.*, 245 U.S. 603, 604 (1918) (distinguishing between the lease in *Wm. Filene's Sons Co. v. Weed*, 245 U.S. 597 (1918), which expressly contemplated deficiency

payments by lessee in case of reentry, and a lease without such a provision). On top of this, the *Nelson* court's later observation that "courts have generally declined to apply the doctrine of anticipatory damages to contracts for the use of land [and] to have it applied to such contracts resort has been had to the introduction into leases of provisions *having that effect*" seems to point back to its earlier statement that "a failure to pay rent when it accrued did not accelerate the unpaid rent in the absence of a provision in the lease *to that effect*." *Nelson*, 373 Ill. at 112–113 (emphasis added). In other words, for anticipatory repudiation to apply, there must be a provision that "accelerate[s] the unpaid rent." *Id*.

This also makes sense in the context of an anticipatory repudiation claim. As Landlord itself notes, the doctrine of anticipatory breach allows the non-defaulting party "the option to treat the entire contract as broken and to sue *immediately* for damages as for a total breach." [118] at 10 (citing *Builder's Concrete Co. of Morton v. Fred Faubel & Sons, Inc.*, 58 Ill. App. 3d 100, 106 (1978) (emphasis added). The payment of future rent, however, is not a present obligation, but a contingent claim. *Nelson*, 373 Ill. at 111. As such, in order to sue *immediately* for rent that would come due after a lease is terminated, there must be a provision that fixes those unaccrued future obligations as present liabilities. A rent acceleration clause is just that.

In sum, because the language in Section 23(a) of the Lease allowing Landlord to "recover all damages which Landlord is entitled herein, at law and in equity" does

not expressly fix[2] unpaid future rent that would be due upon termination of the Lease, it does not fall within *Nelson*'s exception. Therefore, the April 6 Order's holding that "Landlord may not recover from Tenant any damages based on the future rent after the termination of the Lease," [110] at 9, equally applies to Landlord's anticipatory repudiation claim (Count II).

### C. Effect on Triple Net Expenses

Aside from rent, the Lease obligates Tenant to pay certain operating expenses related to the Premises. [1] at 32 ("[I]t is the intention of the parties that this Lease shall be triple net to Landlord and that Tenant shall pay on its own account, to the complete exoneration of Landlord, all costs and expenses affecting the Premises and the business carried on therein."). Landlord requests clarification as to whether the April 6 Order prohibits it from recovering, as part of its actual damages under the Lease or Guaranty, for Tenant's failure to pay these operating expenses while the Premises sat vacant for the period between termination of the Lease and trial. [118] at 10–11.

As noted, the focus of the April 6 Order was on Tenant's liability for future rent after Landlord decided to treat the Lease as terminated. *See* [110] at 8. The Court was not asked by Baird & Warner in its Rule 16 Motion to decide was constitutes "rent."

---

[2]The survival clause in Section 43 of the Lease likewise does not fix unpaid future rent because, by its own terms, it only applies to "obligations of the Tenant accruing prior to the date Tenant vacates or abandons the Premises." [1] at 32.

7

As with the Guarantor's liability, the parties now present a host of arguments as to whether operating expenses are the same as "rent" and whether execution of the Lease "locked in" those operating expenses. [118] at 10–11; [123] at 10; [126] at 3–4. For the reasons already stated, *supra* § II.A, this Court will not address these arguments at this time and will confine itself to clarifying that the April 6 Order did not explicitly address operating expenses. Accordingly, Landlord remains free to pursue those operating expenses as actual damages at trial. Again, this does not mean that this theory of damages will ultimately be cognizable. The parties will have the opportunity to reassert their positions as to liability for Tenant's failure to pay operating expenses in post-trial briefing. The Court will not hear another motion on this issue before trial.

### D. Lost Rent Between Termination and Trial

As noted, the April 6 Order held that "Landlord may not recover from Tenant any damages based on the future rent after the termination of the Lease." [110] at 9. Landlord requests reconsideration of this holding to the extent it bars Landlord from seeking lost rent from Tenant for the period between termination and trial. [118] at 11. This Court will not do so.

*Nelson* is clear: "claims for damages on account of rent accruing after disaffirmance of the lease" are not cognizable absent a valid rent acceleration clause. 373 Ill. at 112. *See also Grommes*, 147 Ill. at 643 ("Where the landlord elects to [terminate a lease], he cannot have a recovery for subsequent rent."). This rule, to this Court's knowledge, has not been overturned by any other decision of the Illinois

8

Supreme Court. And as applied here, it means that once Landlord decided to treat the Lease as terminated no later than November 20, 2023, [43] ¶ 27, it could no longer recover lost rent past that date.

Landlord refers the Court to various new authorities, including *In re Nation*, No. 25-40322, 2026 WL 872646 (Bankr. S.D. Ill. Mar. 27, 2026) and *Camp St. Crossing, LLC v. Ad In, Inc.*, 2021 IL App (3d) 200462-U, for the proposition that even absent a rent acceleration cause, its actual damages can include pre-trial lost rent for the period while it sought to relet the Premises. [118] at 12–13. As a preliminary matter, these cases were not presented in Landlord's response to Baird & Warner's Rule 16 Motion. [100]. Arguments raised for first time on a motion to reconsider are waived. *Baker*, 856 F.3d at 503. But even on the merits, Landlord's authority is unpersuasive. No case it cites comes from the Illinois Supreme Court. Nor do any of its cases explicitly hold that rent between the termination of a lease and trial is available absent a rent acceleration clause. In *Nation*, for instance, the court included post-termination rent as part of actual damages after refusing to enforce a liquidated damages provision. 2026 WL 872646, at *4. But at no point did the *Nation* court examine the question of whether such rent constituted cognizable damages under Illinois law. *Id.* Similarly, in *Camp St. Crossing*, after invalidating a liquidated damages provision in paragraph 12 of the lease, the court allowed post-termination rent to be collected because paragraph 37 of the lease had an accelerated rent provision that allowed "an amount equal to the total remaining Rent for the balance of the Lease Term" to be "immediately due." 2021 IL App (3d) 200462-U, ¶¶ 7, 45, 46.

The *Camp St. Crossing* court, therefore, did not consider the question of whether post-termination rent is available absent a rent acceleration clause because the lease at issue had such a clause. The other cases cited by Landlord similarly do not explicitly address the question.[3] [118] at 3–12; [126] at 1–9.

As noted in the April 6 Order, the situation Landlord now finds itself in is of Landlord's own making. When faced with Tenant's alleged breach of the Lease, Landlord had two options. The first was under Section 23(a): terminate the Lease and Tenant's right of possession. [1] at 29. The second was under Section 23(b): terminate Tenant's right of possession *without* terminating the Lease. *Id.* It is undisputed that Landlord treated the Lease as terminated. [43] ¶ 27. By doing so, it subjected itself to *Nelson*, which cut off post-termination future rent obligations absent a valid rent acceleration clause, which the at-issue language in Section 23(a) does not have. And although Landlord now maintains that its original effort to enforce the unenforceable liquidated damages provision in Section 23(a) should not prevent it, under the election of remedies doctrine[4], from seeking other remedies, [118] at 12, the decision

---

[3]The closest case cited is *In re Handy Andy Home Improvement Centers, Inc.*, which states that "[i]n Illinois, actual lease termination damages consist of the rents owed plus costs incurred in obtaining and maintaining a mitigating lease less a credit for rents obtained under a mitigating lease." 1998 WL 603252, at *4 (Bankr. N.D. Ill. Sept. 11, 1998). *Handy,* however, does not address *Nelson.* Nor do the cases that *Handy* cites for this proposition.

[4]Landlord also reemphasizes that under Section 23 of the Lease, its remedies are "cumulative" and "in addition to" every other remedy in the Lease. [118] at 12. Yet Landlord's remedies are still limited to those existing in "law or in equity." [1] at 28–29. By treating the Lease as terminated, Landlord is no longer entitled under the law to recover unpaid future rent from Tenant as an element of actual damages.

to pursue liquidated damages is not what this Court previously held barred Landlord from recovering future rent after the Lease terminated. [110]. Rather, it was the fact that Landlord decided to treat the Lease as terminated. That decision triggered *Nelson*. And now, Landlord is no longer entitled under the law to recover from Tenant the remedy it seeks.

For these reasons, the Court will not reconsider the April 6 Order's holding.

### III.     Conclusion

For the stated reasons, Landlord's motion clarification and/or reconsideration [118] is granted in part. Landlord may pursue damages at trial consistent with this order.

E N T E R:

Dated: June 12, 2026

MARY M. ROWLAND
United States District Judge

11